Number 061382, Harvey Gillespie v. Dywidag Systems, International. Mr. Weiner, are we ready? Thank you. May it please the court. As used in the Gillespie patent, the term outer surface refers to the outside, exterior-facing surface of the collar of the mine growth bolt, in the phrase, outer surface to find a new drive end, which is found in Claim 1 of the 589 patent. Likewise, within the same claim, the term outer surface is also used to refer to the outside, exterior-facing surface of the tapered plug. The term outer surface should be construed consistently in all of these instances within the same patent and within the same claim to refer to the outside, exterior surface. The district court incorrectly construed outer surface to find a new drive end in a manner inconsistent with the intrinsic evidence, broadening the scope of the term to read on a device having a collar with any shape or any configuration. Let me ask you a question if I could, and if you could take a look at A7. I guess the appendix attached to your brief. And I just want to ask you to see if I understand correctly the district court's claim construction. If you look at Figure 1 there, 20 represents the plug, correct? That's correct, Your Honor. And 26 represents the collar, right? That's correct, Your Honor. Am I correct, and please jump right away, I've got to go. Am I correct in understanding that the district court said exterior means it's exterior if it's outside the outer surface of the plug? In other words, the outer line of the plug is 22. That's correct. And the district court said exterior means outside of that, is that correct? Well, it's a little unclear, I think, what the district court's construction means. It does say that the court says the term clarifies that a surface of the drive collar that is outer relative to the frustoconical inner surface portion thereof provides a drive. So it's a little unclear what the court meant by outer relative to. It may be that the court means located further from a central axis relative to the frustoconical plug. However, it's a little unclear how one would measure outer relative to a device that has a conical, frustoconical shape. It could be outer relative to the smallest diameter of the conical surface. It could be outer meaning further outside relative to the largest diameter of the frustoconical tapered plug. It could mean outer relative to the average diameter of the frustoconical tapered plug. It's a little unclear, and that's really all that the court has in the construction, is it means it's outer relative to the frustoconical inner surface. But the court also said that the claim reads on a collar in any shape or any configuration, which incorrectly broadens out the scope of coverage of the claim. The claims do not recite a collar having any shape or any configuration. Instead, the claims recite a precisely defined configuration in which the outer surface of the collar defines a driving. The specification of the patent consistently describes a preferred embodiment of a minor fault with a collar having a hexagonal outer surface. And as noted by both parties in their briefs, the specification also states that the collar may also have a square or other suitable shape. But there's no indication anywhere in the specification that this shape that's being referred to is anywhere other than on the outer, outside surface of the collar. And the file that's here in the patent also provides some relevant information to construe this term. And in particular, the patent office rejected the pending claims over the Spies patent, which discloses a bolt having a collar 17. In response to this rejection, Gillespie stated, collar 17 appears to be cylindrical on the outside, thus impractical for being rotated by a minor bolting machine. Now, this statement by Mr. Gillespie during the prosecution is important for two reasons. First, Gillespie referred to the surface on the outside of the collar, thus confirming that outer surface refers to the surface on the outside, exterior surface of the collar. Gillespie did not analyze whether the surface was separate or outer relative to the inner surface. Gillespie did not refer to the outermost exterior periphery. Gillespie did not discuss whether the surface was exposed or accessible. Without the DSI accused product at hand, Gillespie acknowledges that the outside surface means simply surface on the outside. If there was any doubt as to the meaning of this term based on the claim language and the specification, any such doubt was eliminated by Gillespie's statement during the prosecution. With respect to Spies? With respect to Spies. I guess it doesn't matter. But it wasn't clear to me how he inferred that number 17 in Fig. 5 of Spies was in fact cylindrical. It's just because there was no indication that it was anything else. It was a little hard to tell in cross-section whether it actually was cylindrical. I mean, would it look the same in cross-section? It would look the same, that's correct. And I don't know if there was something in particular in the written description that the examiner was relying on, but Gillespie did not dispute that fact. But he distinguished the Spies reference on the basis that the collar is cylindrical on the outside. And that's the second reason why this statement is important, because Gillespie distinguished the Spies reference on the basis that this collar 17 had a cylindrical outer surface and not suitable for defining a drive. And by making this argument, Gillespie confirmed that the claims do not include within their scope a minor fault having a collar with a cylindrical outer surface, because such a surface does not provide a drive that is reported by the claims. The district court's construction was inconsistent with the intrinsic evidence for a number of reasons. First, the district court's statement that the outer surface refers to a surface of the drive collar that is outer relative to the frustopanical inner surface. And second, the district court said that outer surface refers to a surface that's outside and separate from the frustopanical inner surface. These concepts of outer actually being separate or meaning outer relative to something, rather than on the outside, have no support in the specification. There's no discussions of these concepts, and these terms, relative to or separate, are not even to be found in the specification. And finally, the district court's statement that the drive head can have any shape or any configuration is inconsistent with the intrinsic record as discussed with respect to the Spies reference. Gillespie, by his arguments, distinguished a cylindrical outer surface from what was encompassed by the claims. And there is no discussion of any other configuration in the specification. The claims recite, and the specification describes, a configuration with a hexagonal outer surface. The specification indicates that some other shapes might be used, but there's no indication anywhere that a different configuration, namely having an inner surface rather than an outer surface, could be included within the scope of the claims. There's no support for that. Under the correct construction, there can be no infringement, and the judgment of the district court should be reversed. Gillespie apparently does not dispute this. We raised this issue in the opening brief, that under DSI's construction, what we think is the correct construction, there can be no infringement because the DSI-accused device has a cylindrical outer surface, and it's undisputed that the part in the DSI collar that engages the minor bolting machine is on the inside surface, an inside square surface. And under the DSI construction, the claims cannot be construed to read on a device with a cylindrical outer surface. And in the red brief, and... Mr. Juanco, question. What do you read the word defined to mean in this case? We read that to mean that the outer surface provides a ground pad, or becomes the ground pad. The, um... You know, in our... It's saying, it's speaking to the creation of the overall structure. But we say that the drive collar has an exterior surface, you know, having a hexagonal square or other suitable non-cylindrical shape, that fits within a correspondingly shaped driving mechanism for rotating and linearly translating bolts. And that way it provides a drive pad. It's a surface that's used for the mechanical connection with the driving mechanism. In other words, a surface that has to be used for the mechanical connection. That's correct. As I was saying, Valesky apparently does not dispute that under our construction, there can be an alteration, because his issue, which was clearly set forth in the blue brief, was not responded to or addressed in any way in the red brief. So, Valesky apparently does not disagree. Let's see, um... I see I'm getting into my rebuttal time. If there are no further questions, I'll save the rest of your time. Thank you, Your Honors. May it please the Court, I'm Mark Glaser. I'm here on behalf of my client, Doug Gillespie. And my client invented and patented a mine roof bolt to help prevent the ceilings of underground mines from falling in. My hope today is that I'll persuade you not to let the ceiling cave in on Judge Jenkins' claim construction ruling from the Utah District Court.  There was an agreed-upon set of concessions, I guess, with respect to how this case would be presented to us, one of which was that you acknowledge the inapplicability of the doctrine of equivalence. Is that correct? The doctrine of equivalence is not in this case. We agreed to waive reliance on the doctrine of equivalence. That's correct, Your Honor. So all we're dealing with is pure, literal infringement. So if we decide that, no matter how much we might think, an Allen wrench might be equivalent to a socket wrench, if we say that this is, that there's a difference between the outside means, or outer means outside, then you have to lose this case, right? That's the deal we struck. Okay. And sitting at console table, I noticed that you have cups provided for console. Those cups have an outer, roughly cylindrical surface. They also have a bottom wall. That bottom wall is part of the outer surface of the cup. Now, if you go to Starbucks, like I did this morning, and you get a cardboard cup, the bottom wall is recessed from the bottom of the cylindrical wall. Now, even though it's recessed, the bottom of that bottom wall is still part of the outer surface of that cup. And I think the same is applicable to our case. But that wouldn't be true if you had, if you knocked out the bottom of the Starbucks cup, presumably after having had the coffee, and you had an angular shape, right? Ah, but you don't knock out all of the bottom wall. You only knock out the center portion of the bottom wall. If I can borrow the exhibit for a moment. You see that not all of the bottom wall is knocked out. Ah, that there is a recess formed, just like the recess in the Starbucks cup. And within that recess, you form either square shapes, or irregular, non-circular shapes, so that a tool can grasp the device. Now, behind, or further up in this device, you see that there is a tapered conical surface. That conical, that frusto-conical surface, is the surface that engages the tubular clamping devices, or they're called, what do we call them? Tapered plugs. Tapered plugs. Yeah, and the frusto-conical surface inside wedges against the tapered plugs, and that's what wedges those tapered plugs against the cable. What exactly is it that makes that surface that you're pointing to, that has the, in this case, square engagement shape, what is it that makes that outer? Is it because its circumference is greater than the circumference of the inner surface against which the plug rests? Suppose that that circumference was quite a bit, even marginally smaller than the circumference either at the top or the bottom of the frusto-conical shape. Would it then still be the outer surface? It would, although as a practical matter, you wouldn't be able to put the tapered plugs inside. Well. But the point is that, well, why wouldn't it be the outer surface? It would be the outer surface because the way that the claim is drafted... What's outer about it, I guess is my question. Right. The term outer surface is used in the claim as a way of distinguishing the surfaces of the collar from the inner frusto-conical surface. So you say anything that isn't part of the inner frusto-conical surface is the outer surface. Correct. And the patent specification is very clear. It says that while the preferred embodiment is shown as a hexagonal shape formed on the external periphery of the collar, yet the collar can have many shapes and really the only concept that you need to incorporate is that the collar has to be shaped or configured in such a way that it will engage or be engaged by a driving tool. It doesn't say that it has to fit within the driving tool. It simply says that it needs to be driven by the engaging tool. Because it's driven by an engaging tool which meets with the outer surface. Yes. Of course that's... The outer surface is what defines the drive pattern. Right. And let me address that issue. But just because there's a drive head doesn't necessarily mean it's the outer surface. Well, I believe... Your definition of outer surface would necessarily encompass any place you'd put a drive head because you're saying outer surface is anything but the frusto-conical surface which is already used up by the plug. Correct. But to the extent that outer surface means something other than everything that isn't used up by the plug... Yes. ...then it does have some limiting feature. You have to find something... In other words, put it another way. It seems to me not crazy to say that there may be a surface which is neither the frusto-conical inner surface nor the outer surface of the plug. There may be... I suppose it's possible that there could be. But the point is that in this device there is a slightly recessed area that's not close to the frusto-conical surface. It's easily engaged by a driving tool. It's accessible, unlike the SPEES patent, the prior art patent, that the examiner was attempting to rely upon in terms of trying to reject the claim of originally, which I'd like to say more about. But certainly the lower recessed portion of this counter is an outer surface. And just like the bottom wall of the Starbucks cup is an outer surface, although it's recessed slightly within the cylinder. Yes. I understand your argument. I think it's a lawyer's argument. I just wonder, if you took that device to Home Depot and closed the door and showed 100 people that device and asked them to point to the outer surface, I wonder how many of them would point to the section on the inside that you're claiming is the outer surface. Well... You could also handle the specification. Well, that's right. I don't think there's any argument that at least this bottom area is part of the outer surface and that even the recessed portions are part of the outer surface, much like the Starbucks cup. In any event, the... But you really can't... It's very hard to find support in the specification for what you just said. Well, not really. Because in the specification, as I mentioned, and this appears on page A11 of the appendix, that portion of the patent, when it refers to the preferred embodiment, it says that while a hexagonal-shaped drive head is illustrated, it says, quote, any other shaped head that accepts a mime roof pole driver will function adequately. And that's what this does. And to that point, I think what's very important in this case is that the examiner, after considering the amendment that was filed November 4, 1992, issued reasons for notice of allowance. And in those reasons for allowance, the examiner said that the prior art does not teach a tapered plug placed over the end of a cable and inserted into a recess of the internally tapered drive collar and wherein the drive collar is rotated. That allowance, those reasons for allowance, are not based on the shape or configuration of the drive head. They're not based on which portion of the drive head engages the bolt driver. They're merely based on the fact that you're using the same collar to both compress the tapered plug and also serve as a drive head to engage the bolt driver, to rotate the cable. It's doing both. The Spiess patent couldn't do that. This accused device does. It compresses the tapered plugs using presto conical inner surface and it also engages the bolt driver using, as I've explained, an outer surface. Well, that would be a convincing argument, it seems to me, with respect to Spiess if that isn't the basis for the distinction of Spiess, i.e. that Spiess doesn't have any place whatsoever to drive this mechanism. But the specific statement in distinguishing Spiess was that it appears to be cylindrical on the outside. Right. Let's put that in context. What happened was that the examiner rejected the claim, arguing not that Spiess anticipated the claimed invention, but rather that it would have been obvious to modify Spiess teachings to provide the claimed invention. And if we look at figure 5 of Spiess, which appears on the appendix at page 8150, we see that in figure 5 there are two components that surround the tapered plug. One of them he refers to as a drive head 19, and the other one he refers to as a collar 17. Now, Spiess teaches that you rotate element 19 to rotate the drive bolt. The examiner proposed that it would have been obvious to modify that and rotate the surrounding drive collar 17 instead. Gillespie's attorney made several arguments as to why that modification would not have been obvious. One of which is that the collar 17 starts out being a slip fit until it's compressed downward. Secondly, he noted, and by the way, once it is compressed downward, the only surface that you have on element 17 to grab onto is the exterior periphery, which is a cylindrical bolt. You asked earlier, how do you know that's cylindrical? He describes it as a circle ring. That's the only place you might have if you were even thinking about modifying Spiess, or the way that Spiess is used to rotate the bolt to grab onto, and Spiess says it's cylindrical. So there's no way to grab it with a tool. So Gillespie's attorney wasn't saying that if you have a drive collar that has a cylindrical exterior periphery that is cylindrical, then that's not an invention. What he did say was it would not have been obvious to modify Spiess in the manner that the examiner proposed because it was illogical. You couldn't do it. You wouldn't be able to turn element 17. And element 19 already has what's obviously an irregular shape at the bottom, and that's what he teaches you to use. It would not have been obvious to modify that if there's no way to rotate 17. Now, the court has, and I'm referring to this court, has issued many opinions which say that it's not appropriate to limit the claims to a preferred embodiment. For example, the L.K. vs. Emko decision. And it's also appropriate to import the description of a particular embodiment from the specification into the claims. For example, the hex shape that's illustrated and described. Again, it's even more appropriate to import that limitation when the very specification states that it can be any shape as long as it can accept the bolt driver or engage a bolt driver. The law does not require an applicant to describe every conceivable and possible future embodiment of his invention. That's set forth in this court's decision in Super Guide vs. Direct TV. And the fact that Mr. Gillespie did not expressly describe a drive head with a hex or square recess in the bottom wall does not mean that it's outside the scope of the claims. As to prosecution history, this court has ruled in Northern Telecom vs. Samsung and Springs Window vs. NoHo that we don't infer a narrowing of claim scope unless there's a clear disavowal of claim coverage with reasonable clarity and deliberateness. Here, the amendments that were made to the claims were made to overcome the examiner's indefinite rejection under Section 112, and the arguments that were submitted in the remarks that the defendant has focused upon were made to show why it would not have been obvious to modify the Spies reference in the manner that the examiner had proposed. There is no disavowal of claim scope and certainly no disavowal of the argument that the outer surface may include the bottom wall, including a recess form in the bottom wall. And I see that I'm out of time, so if you have any other questions, I'd be happy to address them. Thank you. Mr. Glazer is urging this Court to treat the term outer as some kind of an arbitrary designation, as if the claim recited surface 1 and surface 2, and there's no basis for that. Outer has an ordinary meaning. It means on the outside. But if you look at it as something  then the outer portion would be that. I'm not sure if I follow that, Your Honor. There is a long cable that's attached to this that does go through the mineshaft. And it has this orientation. And I'm not sure what you meant by it. What outer would mean on the outside surface of the column? Outer to the mineshaft. Outer in a longitudinal manner relative to the... To think of how to include the structure because other than for the agreement with respect to equivalency, it's hard to see why it would make very much difference whether the tool grasps the device from one part or another. Yes, and perhaps Mr. Galeski could have claimed, as I mentioned, in a different manner,  outer surface in the claim. Maybe it could have said a surface defining a drive head or it could have said a drive head. And if that were the claim, then the examiner would have examined the claim with that scope in mind. And we don't know if that would have been patentable subject matter or not. And DSI has waived their invalidity defenses. The record is really unclear about whether that would be patentable. But the point is the claim recites an outer surface defining a drive head. And competitors, including the defendant, are entitled to rely on that claim limitation to avoid infringement. And it may be that now, with the accused device in mind, that Galeski wishes the claim scope were more broad and didn't limit this outer surface to the outer surface of the collar. But that's, in fact, what the claim requires. This is not some arbitrary designation. As Mr. Glazer is urging the court to interpret it as any surface other than this frustacantical inner surface. Outer has an ordinary meaning of being on the outside. And the prosecution history confirms that outer means on the outside. What do you say about his, actually, I think, rather clever example of the Starbucks cup, in which you have the bottom of the cup. You know the structure. The bottom of the cup creates an indentation at the bottom. But the bottom and the section outside of the cup is inside the walls. And it's possible that it could be described as an outer surface of the cup in that context. And, in fact, this collar does have more than one surface that could be described as outer. And there's the upper hemispherical surface that engages with the roof plate. We don't have a surface on the bottom at all in our product. That's undisputed. And it's undisputed that it's this surface on the inside of the collar that's used to engage with a driving mechanism. There's no flat surface on the bottom, like in the analogy to the cup. There is at least a flip between the frustacantical inner surface and the drive head, main unit, whatever you call it now. There is a change in diameter halfway through the collar. Yes, that's correct. So he would say, as he did to me, he said that, well, if you just take your Starbucks cup and you cut out a section of the bottom of the cup, and then you have this device. And why isn't it fair to say that the section at the very bottom of the cup, which is above what you've now created as the lid, is part of the outside? I'm not sure how that would work in a cup example. In this case, we don't have a very flat lip at the bottom. We have a device with walls with some thickness and with a hollow inside with an inner surface. And Mr. Pillay's statements about the statement of reasons for allowance and about exactly why Steve's was distinguished. The issue in the case is not what could have been obtained, what's required to avoid the prior art, or whether the examiner mentioned a particular limitation in the statement of reasons for allowance. I mean, that statement has no relevance at all as to the claim construction issues before the court. And there's no authority for the argument that an examiner needs to mention a particular limitation in order for that limitation to be given any weight in construing the claim, which is essentially, I think, what Doug Gillespie's argument in this case. I've seen it a lot of times, but there's no further comment. Any more questions? Any more questions? Thank you, Your Honor. Thank you, Mr. Weiner. Thank you, Mr. Ritchie. Thank you so much.